IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                          Case No. 3:01-cr-00304-10

MARCUS JOHNSON,

Defendant.

MEMORANDUM OPINION

This matter comes before the Court on Defendant Marcus Johnson's Amended Motion to

Reduce Sentence Under the First Step Act (the "Amended Motion").[1] (ECF No. 778.) The

United States responded in opposition to the Motion (the "Opposition"), (ECF No. 802), and Mr.

Johnson replied. (ECF No. 813.)

This matter is ripe for disposition. The Court dispenses with oral argument because the

materials before it adequately present the facts and legal contentions, and argument would not

aid the decisional process. For the reasons articulated below, the Court will DENY the Motion.

I. Background

A.    Mr. Johnson's Underlying Offense

On November 20, 2001, Mr. Johnson was charged in two-counts of a three-count

Superseding Indictment returned by an Eastern District of Virginia Grand Jury: one count of

violating the Racketeering Influenced and Corrupt Organizations Act ("RICO"), in violation of

18 U.S.C. § 1962(c) (Count One), and one count of conspiracy to distribute fifty grams or more

of a mixture and substance which contained a detectable amount of cocaine base, in violation of

---

[1] Mr. Johnson's Amended Motion adds additional support to the arguments made in the initial Motion to Reduce Sentence Under the First Step Act. (ECF No. 771.) The Court will address the arguments as presented in the Amended Motion and will deny Mr. Johnson's initial Motion to Reduce Sentence Under the First Step Act as Moot. (ECF No. 771.)

21 U.S.C. § 846 (Count Two).  (ECF No. 67.)  Counts One and Two referenced criminal activity that occurred from 1992 until 2001.  (*See* ECF No. 67, at 5–6, 21–22; ECF No. 752-1 ¶ 22.)  Mr. Johnson turned 18 years old on December 24, 1999 and was a juvenile during most of that time. (*See* ECF No. 752-1 ¶ 76.)  On May 8, 2002, following a six-day trial, a jury found Mr. Johnson guilty on both Count One and Two.  (ECF No. 231, at 1–5.)

Prior to Mr. Johnson's September 5, 2002 sentencing, the probation officer prepared the Presentence Report ("PSR"), summarizing the conduct of Mr. Johnson's underlying offense. (ECF No. 752-1.)  Mr. Johnson was a member of the Fulton Hill Hustlers, a criminal organization that "engaged in the distribution of cocaine base . . . and committed acts of violence" in the City of Richmond and Henrico County, Virginia.  (ECF No. 752-1 ¶ 22.)  Mr. Johnson operated within the Fulton Hill Hustlers as a "street level" distributor between 1992 and 2001, purchasing "cocaine in quarter to half ounce and larger quantities, and then re-distribut[ing] the cocaine base in smaller user amounts."  (ECF No. 752-1 ¶ 41.)  Mr. Johnson is additionally responsible for the following crimes:  the September 1, 1995 attempted murder of Melvin Lewis, Sr.; the September 9, 1995 murder of Marcus Turner; the July 5, 1996 murder of Liston Tyler; and, the July 20, 1996 murder of Robert Tabb.  (ECF No. 752-1 ¶¶ 25, 28, 31, 32.) Mr. Johnson was 16 to 17 years old at the time of these murders.  (*See* ECF No. 752-1, at 2.)

The PSR also summarized Mr. Johnson's offense level and criminal history.  The probation officer calculated Mr. Johnson's Total Offense Level as 49, which included a two point increase pursuant to the United States Sentencing Guidelines § 3C1.1 for obstruction of justice by threatening and intimidating a witness.  (ECF No. 752-1 ¶¶ 48, 105.)  Mr. Johnson's criminal history score subtotaled 12 points based on his prior convictions, which included petit larceny; possession of a firearm on school property; unauthorized use of an automobile and hit

2

and run; assault; possession of marijuana; automobile theft; possession of cocaine; possession of crack cocaine; shooting into an occupied vehicle; failure to appear; escaping from a law enforcement officer with force; trespassing; destruction of property; possession with intent to distribute crack cocaine; conspiracy with intent to distribute cocaine; murder; use of a firearm during murder; assault and battery; and, threats over the phone. (ECF No. 752-1 ¶¶ 50–74.).

However, Mr. Johnson received a two-point addition to his criminal history score computation pursuant to U.S.S.G. § 4A1.1(d) (2001)[2] because he committed the underlying offense while under a criminal justice sentence for Unauthorized Use of Auto, Possession of Marijuana, and Reckless Driving. (ECF No. 752-1, at 46.) Mr. Johnson also received an additional point to his criminal history score computation pursuant to U.S.S.G. § 4A1.1(e) (2001) because he committed the underlying offense less than two years following his release from imprisonment for violations of his suspended trespassing and destruction of property sentences. (ECF No. 752-1, at 46.) This led to a criminal history score of 15 and a Criminal History Category of VI. (ECF No. 752-1, at 46.) According to the law at the time, Mr. Johnson's Total Offense Level of 49 and Criminal History Category of VI resulted in a Sentencing Guidelines range of Life imprisonment on each Count One and Count Two. (ECF No. 752-1 ¶¶ 105–107.) Count Two carried a statutory minimum of 10 years imprisonment. (ECF No. 752-1 ¶ 107.)

---

[2] Under the November 1, 2023 Sentencing Guideline Amendments, however, the provisions of U.S.S.G. §4A1.1(d) (2001) transitioned to U.S.S.G. §4A1.1(e) (2023). Under Amendment 821 at §4A1.1(e), Mr. Johnson would receive only one additional criminal history point for committing the offense while under any criminal justice sentence. This provision of Amendment 821 applies retroactively. U.S.S.G. §1B1.10(d) (2023).

With this adjustment, Mr. Johnson's criminal history score would be 14 and his Criminal History Category would remain VI. This would have no impact on the guideline imprisonment range, which remains Life imprisonment on Count One.

The probation officer also noted "multiple factors which may warrant a sentence within the upper end of the guideline range. Additionally, should the guideline range be reduced, these factors may also provide a basis for an increased sentence outside the range established by the guidelines." (ECF No. 752-1 ¶ 114.) These factors included:

> Weapons and Dangerous Instrumentalities pursuant to U.S.S.G. § 5K2.6;
> Extreme Conduct pursuant to U.S.S.G. § 5K2.8;
> Criminal Purpose pursuant to U.S.S.G. § 5K2.9; and
> Violent Street Gangs pursuant to U.S.S.G. § 5K2.18.

(ECF No. 752-1 ¶ 114.) The probation officer further asserted that "since these individual encouraged factors may be applicable in and of themselves, the fact that there exists a combination of these factors is also a consideration which may warrant an upward departure [from the sentencing guidelines]." (ECF No. 752-1 ¶ 114.)

Regarding his personal history, the PSR reported that Mr. Johnson had had no contact with his father since 1988. (ECF No. 752-1 ¶ 78.) Mr. Johnson's father had a prior criminal history and was "a heavy drinker". (ECF No. 752-1 ¶ 78.) Mr. Johnson's mother worked for a time as a nurse for The United States Army. (ECF No. 752-1 ¶ 76.) He lived with his maternal grandparents until sixth grade when they passed. (ECF No. 752-1 ¶ 76.) Mr. Johnson reported that, after he lost is grandparents, "nothing was right anymore." (ECF No. 752-1 ¶ 76.) After he moved in with his mother in Fulton Hill, although she tried to provide a structured environment, "he continued to come to the attention of law enforcement authorities." (ECF No. 752-1 ¶ 76.) His stepfather, Gerald Jenkins, reported that Mr. Johnson never lacked for love and affection. (ECF No. 752-1 ¶ 77.) Mr. Jenkins said that he and his wife tried to maintain a "regular household", but that negative peer influences took over. (ECF No. 752-1 ¶ 77.)

The PSR next reported information on Mr. Johnson's physical and mental condition. (ECF No. 752-1 ¶¶ 85–86.) Mr. Johnson reported "no known allergies and described his overall

4

general health as good." (ECF No. 752-1 ¶ 85.) However, Mr. Johnson "reported to juvenile authorities that he sustained a gunshot wound to the right thigh in August 1995, and that the bullet remained lodged in his thigh." (ECF No. 752-1 ¶ 85.)

On September 5, 2002, the Court sentenced Mr. Johnson to Life imprisonment on both counts, to run concurrently. (ECF No. 312, at 2.) On September 16, 2002, the Court entered an Amended Judgment reflecting that Mr. Johnson's sentence would run consecutively to his undischarged state sentence. (ECF No. 318, at 2.) The two Life terms of imprisonment were to be followed by concurrent five-year terms of supervised release on each count. (ECF No. 318.)

On September 11, 2002, Mr. Johnson appealed his conviction, arguing that "out-of-court statements made by various [Fulton Hill Hustlers] should have been excluded as hearsay." (ECF No. 669 (citing *United States v. Irving*, 66 F. App'x 480, 482 (4th Cir. 2003)).) On June 3, 2003, the United States Court of appeals for the Fourth Circuit affirmed Mr. Johnson's convictions and sentence. *Irving*, 66 F. App'x at 483.

On March 9, 2016, Mr. Johnson filed a *pro se* motion attacking his sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion"), raising the following claim for relief: "[p]etitioner's sentence was in violation of the Eighth Amendment for life without parole for juvenile offenders, under *Miller v. Alabama*, 567 U.S. 460 (2012)[,] and *Montgomery v. Louisiana*, 577 U.S. 190 (2016)." ((ECF No. 669, at 2 (citing ECF No. 623, at 4)).)[3] This Court denied Mr. Johnson's § 2255 Motion on July 19, 2017 as untimely filed under the applicable one-year period of limitation established by Section 101 of the Antiterrorism and Effective Death Penalty Act. (ECF No. 669, at 3.) Mr. Johnson appealed and, on April 2, 2018, the United States Court of

---

[3] The Court uses the pagination assigned to Mr. Johnson's submissions by the CM/ECF docketing system. The Court corrects the punctuation and capitalization in quotations from Mr. Johnson's submissions.

Appeals for the Fourth Circuit denied Mr. Johnson a certificate of appealability and dismissed his appeal. *See United States v. Johnson*, 717 F. App'x 311 (4th Cir. 2018).

Mr. Johnson is currently housed at USP McCreary in Pine Knot, KY and has no current projected release date as his sentence is Life. *See Fed. Inmate Locator*, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited February 21, 2025); *USP McCreary,* BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/mcr/ (last visited February 21, 2025). Mr. Johnson has served 23 years, 2 months, and 9 days as of February 21, 2025. (*See* ECF No. 752-1, at 1.)

### B.    Mr. Johnson's Motion for Compassionate Release

Mr. Johnson, through counsel, filed the instant motion, first arguing that he is eligible for relief under the First Step Act because his conviction of the offense underlying Count Two, Conspiracy to Distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(iii), constitutes a covered offense under Section 404 of the First Step Act. (ECF No. 778, at 4–7.) Mr. Johnson points to the "sentencing package theory" that the Fourth Circuit has adopted to suggest that, in reconsidering Mr. Johnson's sentence on Count Two under the First Step Act, this Court is empowered to consider Mr. Johnson's sentence under Count One. (ECF No. 778, at 5 (citing *United States v. Hadden*, 475 F.3d 652 (4th Cir. 2007) and *United States v. Ventura*, 864 F.3d 301 (4th Cir. 2017)).)

Mr. Johnson next argues that the life sentences he received for Counts One and Two were unconstitutional because they violated the Supreme Court's ruling against mandatory life sentences for juveniles in *Miller v. Alabama*, 567 U.S. 460 (2012), which was given retroactive effect by *Montgomery v. Louisiana*, 577 U.S. 190 (2016). (ECF No. 778, at 7–9.) Mr. Johnson asserts that because the life sentences are unconstitutional, this Court lacks discretion to deny

6

relief. (ECF No. 778, at 7.) Alternatively, Mr. Johnson contends that "(i) his procedural inability to vindicate his substantive constitutional right under *Miller* to a sentence other than life without parole, as well as (ii) his youthfulness and his highly mitigating personal history . . . and the fact of his extraordinarily and disproportionately long sentence" present extraordinary and compelling reasons for a sentence reduction under 18 U.S.C. § 3582(c). (ECF No. 778, at 14.)

Mr. Johnson asserts that a reduced sentence of 360 months is justified under the factors set forth in 18 U.S.C. § 3553(a). (ECF No. 778, at 14–16.) Specifically, Mr. Johnson claims his sentences are disproportionate relative to the average sentences for murder or racketeering in federal court at the time of his sentencing and that a lesser sentence would provide adequate punishment for the offense. (ECF No. 778, at 15.) Mr. Johnson also asserts that his brain has developed significantly since he was incarcerated and that the intervening time and maturation mean he "is quite literally not the person who committed these offenses[,]" and therefore a reduced sentenced would still protect the public. (ECF No. 778, at 15–16.)

### C.    Response from the United States

The United States opposes Mr. Johnson's motion for a reduced sentence, arguing that the gravity of the crimes, Mr. Johnson's prior criminal history and numerous disciplinary infractions while incarcerated, and an alleged lack of an effect from the Fair Sentencing Act, weigh against granting the motion. (ECF No. 802, at 1.) The United States contends that the seriousness of Mr. Johnson's crimes, namely "the murders of Marcus Turner, Liston Tyler, and Robert Tabb, all on separate occasions," fully justified the life sentence. (ECF No. 802, at 2.) The United States also points to Mr. Johnson's numerous disciplinary infractions while incarcerated, including four infractions in the five years preceding and three infractions after filing the Amended Motion—one of which was an attempted assault of a prison staff member—as

7

demonstrating that he has "been a menace to his community at all times during his release from incarceration, and that the only time the community was safe from him was when he was incarcerated." (ECF No. 802, at 5–6.)

### 1.    Relief Under Section 404 of the First Step Act

The United States first argues that Mr. Johnson is ineligible for a reduction under § 404 of the First Step Act because his RICO offense in Count One is not a "covered offense". (ECF No. 802, at 6.) Relying in part on the briefs and oral argument in *Terry v. United States*, 593 U.S. 486 (2021), as well as case law from the Fourth and Eleventh Circuits, the United States contends that because the Fair Sentencing Act did not modify the RICO penalties in § 1963(a), and Mr. Johnson's penalty range of life was determined by the murders the jury found rather than the quantity of crack cocaine trafficked, Mr. Johnson's RICO offense should not be considered a covered offense. (ECF No. 802, at 6–8.)

Noting that text of § 404(c) explicitly states that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section[,]" the United States argues that even if this Court found Count One to be a covered offense, this Court should exercise its discretion and deny Mr. Johnson's motion. (ECF No. 802, at 9.) First, the United States posits that despite the holding by the Fourth Circuit in *United States v. Collington* that a covered crack offense requires a court to impose a reduced sentence within the lower statutory penalty range, the Court maintains discretion in this case since Count One is a RICO offense. (ECF No. 802, at 8–9 (citing *United States v. Collington*, 995 F.3d 347 (4th Cir. 2021)).)

Second, the United States notes that, because the drug quantities involved in this case far exceed the threshold of 280 grams in the Fair Sentencing Act, the Fair Sentencing Act "would

have no effect in how the penalty range was calculated for [Mr. Johnson's] RICO offense or even his § 846 conviction." (ECF No. 802, at 10.)

Third, pointing out that Congress instructed the Sentencing Commission to increase offense levels if a defendant used violence during a drug trafficking offense, the United States reasons that, because Mr. Johnson's crimes were violent in nature, they are not the target of the Fair Sentencing Act's goal of reducing sentencing disparities for drug trafficking offenses. (ECF No. 802, at 10–11 (quoting *United States v. Roane*, No. 3:92cr68 (DJN), 2020 WL 6370984, at *6 (E.D. Va. Oct. 29, 2020)).)

### 2.   **Constitutionality of Mr. Johnson's Sentence**

The United States also opposes Mr. Johnson's constitutional challenge, asserting that the Honorable James R. Spencer made comments during Mr. Johnson's sentencing that even met the standard set later by the Supreme Court in *Jones v. Mississippi*, 593 U.S. 98 (2021), for sentencing juveniles to life without the possibility of parole for homicides committed as a juvenile. (ECF No. 802, at 13.)

The United States argues that Mr. Johnson's case falls outside the scope of *Miller* for three reasons. (ECF No. 802, at 13.) First, the United States contends that, because Mr. Johnson did not withdraw from the Fulton Hill Hustlers' criminal conspiracy before he turned eighteen, he had ongoing criminal liability as an adult and his juvenile crimes could be used to enhance his adult criminal liability. (ECF No. 802, at 13–14.) Second, the United States identifies precedent of the Supreme Court and other Circuits, showing that the Eighth Amendment does not prohibit the imposition of consecutive sentences which create a *de facto* life sentence for juveniles. (ECF No. 802, at 14.) Finally, the United States argues that Mr. Johnson is free to seek compassionate release under 18 U.S.C. § 3852(c)(1)(A) if his health were to imperil him in the future and,

therefore, he has a potential avenue for early release and his argument falls outside the Supreme Court's prohibition on mandatory sentencing of juveniles to life *without parole*. (ECF No. 802, at 15.)

**D.    Mr. Johnson's Reply**

In reply, Mr. Johnson notes that the Supreme Court's ruling in the 2021 *Terry* case only addressed defendants sentenced under § 841(b)(1)(C), which does not preclude relief for Mr. Johnson because he was convicted under § 841(b)(1)(A). (ECF No. 813, at 1.) Second, Mr. Johnson highlights that his requested reduced sentence of 360 months falls within the reduced guideline range for his covered offense of "10 years to life." (ECF No. 813, at 1–2 (citing ECF No. 752).) Third, Mr. Johnson avers that *Terry* does not foreclose the application of the Fourth Circuit's sentencing package doctrine. (ECF No. 813, at 2.)

Finally, Mr. Johnson reiterates the arguments made in his Amended Motion that his life sentences were unconstitutional, and, under *United States v. Lancaster*, 997 F.3d 171, 178 (4th Cir. 2021), this Court has the discretion to consider Mr. Johnson's Eighth Amendment claim. (ECF No. 813, at 3–4.) Mr. Johnson also suggests that *Jones v. Mississippi* is distinguishable from Mr. Johnson's case, because the Supreme Court found in *Jones* that the life sentence was constitutional because the trial judge had discretion to impose a lesser sentence. In contrast, Judge Spencer was bound by the then-mandatory sentencing guidelines. (ECF No. 813, at 3–4 (citing *United States v. Friend*, 2 F.4th 369 (4th Cir. 2021)).)

**II.  Legal Standards**

**A.    Modification of a Sentence Under Section 404 of the First Step Act**

Generally, courts do not have the authority to modify a term of imprisonment once it has been imposed. *Freeman v. United States*, 564 U.S. 522, 526 (2011). When a court imposes a

sentence of imprisonment, that is considered a final judgment on the matter. 18 U.S.C.

§ 3582(b). It is well established that "'[t]he law closely guards the finality of criminal sentences

against judicial 'change of heart.'" *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010)

(quoting *United States v. Layman*, 116 F.3d 105, 109 (4th Cir. 1997)).

      Statutes further dictate that a "court may not modify a term of imprisonment once it has

been imposed" except in limited circumstances. *See, e.g.*, 18 U.S.C. § 3582(c)(1)(B) (permitting

sentence modifications only "to the extent otherwise expressly permitted by statute or by Rule 35

of the Federal Rules of Criminal Procedure"). The First Step Act is one such statute which

expressly permits sentence modifications. *See United States v. Wirsing*, 943 F.3d 175, 185 (4th

Cir. 2019) ("the distinct language of the First Step Act compels the interpretation that motions

for relief under that statute are appropriately brought under § 3582(c)(1)(B).").

      Section 2 amended 21 U.S.C. § 841(b)(1) modified the drug amounts required to trigger

mandatory minimums for crack cocaine trafficking offenses from 5 grams to 28 grams with

respect to the 5-year mandatory minimum and from 50 grams to 280 grams with respect to the

10-year mandatory minimum. Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2(a), 124

Stat. 2372. The Fair Sentencing Act also eliminated the 5-year mandatory minimum for simple

possession of crack. *Id.* § 3, 124 Stat. at 2372 (codified at 21 U.S.C. § 844(a)); *see also Dorsey

v. United States*, 567 U.S. 260, 276–77 (2012) (explaining sentencing discrepancies for certain

drug offenses that the Fair Sentencing Act sought to remedy). As originally contemplated, the

statutory minima modified by the Fair Sentencing Act did not apply retroactively to crack

cocaine offenders sentenced before August 3, 2010. *Dorsey*, 567 U.S. at 268; *United States v.

Black*, 737 F.3d 280, 287 (4th Cir. 2013). Congress sought to remediate the non-retroactivity of

the statute with the passage of the First Step Act of 2018. Pub. L. No. 115-391, 132 Stat. 5194.

Section 404(b) of the First Step Act, in particular, provides a narrow avenue for retroactive application of the amended mandatory minima. *Id.*, 132 Stat. at 5222.

To qualify for retroactive relief under the First Step Act, a defendant must show that they (1) committed a "covered offense" under Section 404(a)[4] before August 3, 2010, (2) did not have their sentence imposed or reduced under sections 2[5] or 3[6] of the Fair Sentencing Act of 2010, and (3) did not file a previous motion under § 404 of the First Step Act that that Court decided on the merits. *See United States v. Hardnett*, 417 F. Supp. 3d 725, 733 n.7 (E.D. Va. 2019) (quoting First Step Act statute and limitations contained therein). In determining whether a conviction is a covered offense under the First Step Act, courts are instructed to consider "whether the Fair

---

[4] Section 404(a) defines a "covered offense" as "a violation of Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010." First Step Act, 132 Stat. at 5222.

[5] Section Two of the Fair Sentencing Act of 2010 provides:

(a) CSA.—Section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) is amended—

(1) in subparagraph (A)(iii), by striking ''50 grams'' and inserting ''280 grams''; and

(2) in subparagraph (B)(iii), by striking ''5 grams'' and inserting ''28 grams''.

(b) IMPORT AND EXPORT ACT.—Section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)) is amended—

(1) in paragraph (1)(C), by striking ''50 grams'' and inserting ''280 grams''; and

(2) in paragraph (2)(C), by striking ''5 grams'' and inserting ''28 grams''.

Fair Sentencing Act of 2010, § 2, 124 Stat. at 2372.

[6] Section Three of the Fair Sentencing Act of 2010 states, "Section 404(a) of the Controlled Substances Act (21 U.S.C. 844(a)) is amended by striking the sentence beginning 'Notwithstanding the preceding sentence'." Fair Sentencing Act of 2010, § 3, 124 Stat. at 2372.

Sentencing Act modified the statutory penalties for [the] petitioner's offense." *Terry,* 593 U.S. at 492; *see also United States v. Allen*, No. 3:03cr394 (DJN), 2022 WL 2124495, at *6 (E.D. Va. June 13, 2022) ("*Terry* dictates that answering this question involves examining the elements of the offense and determining [ ] the statutory penalties that would result from a conviction charging those same elements changed in 2010 with the passage of the Fair Sentencing Act.").

The Supreme Court has clarified that the modified statutory penalties apply "only for subparagraph (A) and (B) crack offenses [under § 841(b)(1)]—that is, the offenses that triggered mandatory-minimum penalties." *Terry*, 593 U.S. at 495. Namely, "[w]hile career offenders convicted under subparagraph (A) or subparagraph (B) can now seek resentencing, that door remains closed to career offenders convicted under subparagraph (C)." *Id.* at 502 (Sotomayor, J., concurring in part).

### B.    Compassionate Release Under the First Step Act of 2018

#### 1.    Legal Standard

Prior to the First Step Act of 2018, an individual could not petition the district court for relief on compassionate release grounds without approval from the BOP. *See Coleman v. United States*, 465 F. Supp. 3d 543, 546 (E.D. Va. 2020). In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[7] First Step Act of 2018, Pub. L. No.

---

[7] Section 3582(c) states, in pertinent part:

The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has

115–391, 115th Cong. (2018).  Under the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences.  *Coleman*, 465 F. Supp. 3d at 546.

Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct.  *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)).  However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification.  *See* 28 U.S.C. § 994(t).[8]

---

fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

[8] 28 U.S.C. § 994(t) states:

The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific

### 2.    Exhaustion of Administrative Remedies

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also McCoy*, 981 F.3d at 283 ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time.") "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020); *see also United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (same).

### 3.    Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction[.]"  18 U.S.C. § 3582(c)(1)(A)(i). Congress did not define "extraordinary and compelling reasons" in the statute. The United States Sentencing Commission does, however, further define "extraordinary

---

examples. *Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.*

28 U.S.C. § 994(t) (emphasis added).

and compelling reasons." U.S.S.G. § 1B1.13(b); *see United States v. Burrell*, No. 3:04-CR-364

(JAG), 2023 WL 7726404, at *4 n.7 (E.D. Va. Nov. 15, 2023). The Sentencing Commission

> addressed the issue in a policy statement, United States Sentencing Guideline
> § 1B1.13, which provided the BOP with several categories of extraordinary and
> compelling reasons to consider. For years following the passage of the First Step
> Act, the Sentencing Commission failed to update § 1B1.13 to account for motions
> filed by defendants, meaning the policy did not bind the courts when presented
> with a defendant's motion for compassionate release. A court therefore remained
> empowered . . . to consider any extraordinary and compelling reason for release
> that a defendant might raise.

*Burrell*, 2023 WL 7726404, at *4, n. 7 (cleaned up) (citing *McCoy*, 981 F.3d at 276, 281–

82, 284).

The 2021 Sentencing Guidelines enumerated four bases on which to evaluate a motion

for compassionate release. U.S.S.G. § 1B1.13 cmt. n.1(A)–(D) (U.S. SENT'G COMM'N 2021)

identified four bases to establish extraordinary and compelling reasons for release:

> (A) medical conditions;
> (B) age;
> (C) family circumstances; and,
> (D) other reasons.

U.S.S.G. § 1B1.13 cmt. n.1(A)–(D) (U.S. SENT'G COMM'N 2021).

In 2023, the United States Sentencing Commission published new sentencing guidelines

amendments (the "2023 Sentencing Guidelines Amendments" or "2023 Amendments").

Pursuant to the 2023 Amendments, the Sentencing Guidelines now identify six instructive

categories of extraordinary and compelling reasons that may allow for a sentence reduction.[9]

These are:

---

[9] *See* Appendix A, U.S.S.G § 1B1.13(b) (2023).

(1) certain medical circumstances of the defendant, such as terminal illness or the inability to receive specialized medical care while incarcerated, [U.S.S.G.] § 1B1.13(b)(1)[10];

(2) the defendant's age, *id.* § 1B1.13(b)(2)[11];

(3) the defendant's family circumstances, *id.* § 1B1.13(b)(3)[12];

(4) the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, *id.* § 1B1.13(b)(4) [13];

(5) 'any other circumstances or combination of circumstances . . . similar in gravity to' the circumstances 'described in paragraphs (1) through (4).' *Id.* § 1B1.13(b)(5) [14], and,

(6) the defendant received an 'unusually long sentence,' *id.* § 1B1.13(b)(6).[15]

*United States v. Tucker*, 2023 WL 8357340, at *5 (D. Md. Dec. 1, 2023).

The United States Court of Appeals for the Fourth Circuit explained—even before the 2023 Sentencing Guidelines Amendments—that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. The Fourth Circuit further illuminated that:

---

[10] *See* App. A, at **U.S.S.G. § 1B1.13(b)(1)**; *cf.* Appendix B, **U.S.S.G. § 1B1.13 cmt. n.1(A)**.

[11] *See* App. A, at **U.S.S.G § 1B1.13(b)(2)**; *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(B)**.

[12] *See* App. A, at **U.S.S.G. § 1B1.13(b)(3)**; *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(C)**.

[13] *See* App. A, at **U.S.S.G. § 1B1.13(b)(4)**.

[14] *See* App. A, at **U.S.S.G. § 1B1.13(b)(5)**; *cf.* App. B., at **U.S.S.G. § 1B1.13 cmt.n.1(D)**.

[15] *See* App. A, at **U.S.S.G. § 1B1.13(b)(6)**.

[w]hen Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances—when sufficiently extraordinary and compelling—than to society's interests in the defendant's continued incarceration and the finality of judgments.

*United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022).

Since *McCoy* and *Hargrove*, the 2023 Amendments have taken effect. These Amendments clarify the Commission's view on what could constitute "extraordinary and compelling reasons" for a sentence reduction under the First Step Act.[16] The *McCoy* court has noted, however, that the Guidelines, while helpful, are merely advisory and do not bind the Court. "[D]istrict courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)); *see also United States v. Davis*, 99 F.4th 647, 658 (4th Cir. 2024) (confirming that under the 2023 Amendments, courts can still "consider any extraordinary or compelling reason for release raised by a defendant").

The United States Supreme Court has determined that "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence[.]" *Concepcion v. United States*, 597 U.S. 481, 500 (2022). District courts within the

---

[16] As other courts have observed,

[t]he Fourth Circuit has yet to address the impact the amended Sentencing Guidelines have on *McCoy* and similar rulings or precisely how courts should apply the amended policy statement in motions for compassionate release, particularly motions filed before November 1, 2023. The Court need not reach this question, however, because [Mr. Johnson] has failed to establish an extraordinary and compelling reason to reduce his sentence applying both the case law before November 1, 2023, and the amended Sentencing Guidelines.

*Burrell*, 2023 WL 7726404, at *4 n.7.

Fourth Circuit have decided that sentencing disparities resulting from intervening changes in the Fourth Circuit's interpretation of the sentencing guidelines can constitute an "extraordinary and compelling reason" for compassionate release.[17] *See, e.g., United States v. Redd*, 444 F. Supp. 3d 717, 723–724 (E.D. Va. 2020) (finding that the "gross disparity between the sentence Mr. Redd received and the sentence he would have received after the First Step Act . . . constitute[s] [an] extraordinary and compelling reason[ ] that warrant[s] a reduction to Mr. Redd's sentence"); *see also United States v. Fennell*, 570 F. Supp. 3d 357, 363 (W.D. Va. 2021) (finding that "the significant disparity between Fennell's current sentence and the [ten years reduced] sentence he would face today for the same offense provides an extraordinary and compelling basis for a sentence reduction under § 3582(c)(1)(A)"); *United States v. Arey*, 461 F. Supp. 3d 343, 350 (W.D. Va. 2020) ("The fact that if [the defendant] were sentenced today for the same conduct he would likely receive a [forty year] lower sentence than the one he is currently serving constitutes an 'extraordinary and compelling' reason justifying potential sentence reduction under § 3582(c)(1)(A)").

A plethora of unpublished cases that follow this same reasoning. *See, e.g., United States v. Banks*, 2022 WL 220638, at *2–3, *6 (W.D. Va. Jan. 25, 2022) (88-month difference between the low end of defendant's career offender sentencing range and the low end of the non-career offender sentencing range was "such [a] gross disparit[y] in sentencing" that it constituted an

---

[17] The 2023 Sentencing Guideline Amendments added subsection (c) to U.S.S.G. § 1B1.13, which provides that a change in the law, or in non-retroactive Guidelines amendments, ordinarily shall not be considered when determining whether extraordinary and compelling reasons exist. However, subsection (c) includes an important caveat: "if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." U.S.S.G. § 1B1.13(c) (2023).

extraordinary and compelling circumstance); *United States v. Williams*, No. 1:14-CR-428 (TSE),
2021 WL 5827327, at *6–7 (E.D. Va. Dec. 8, 2021) (difference of "more than three years longer
than the high end of the guidelines that would have applied under *Norman*"[18] warranted a
reduction in defendant's sentence from 168 months to 125 months); *United States v. Huggins*,
2021 WL 3025459, at *4 (W.D. Va. July 16, 2021) (sentencing disparity of more than five years
was a "gross disparity" and an "extraordinary and compelling" reason warranting a sentence
reduction); *but see United States v. Hinton*, No. 2:15-CR-80 (MSD), 2022 WL 988372, at *5
(E.D. Va. Mar. 31, 2022) (three to six year sentencing disparity "not so drastic that it constitutes
an extraordinary and compelling reason for relief"). When considering the 2018 congressional
modifications to stacked penalties for § 924(c) convictions that are relevant here, the Fourth
Circuit has specifically held that "courts legitimately may consider, under the 'extraordinary and
compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as
dramatically longer than necessary or fair." *McCoy*, 981 F.3d at 275, 285–86 (quoting *Redd*, 444
F. Supp. 3d at 723).

The 2023 Sentencing Guidelines Amendments explain in greater detail what a court
should consider when considering unusually long sentences as a basis for an extraordinary and
compelling reason to grant compassionate release. The relevant section of U.S.S.G.
§ 1B1.13(b) reads:

> (6)     UNUSUALLY LONG SENTENCE.—If a defendant received an
> unusually long sentence and has served at least 10 years of the term of
> imprisonment, a change in the law (other than an amendment to the Guidelines
> Manual that has not been made retroactive) may be considered in determining
> whether the defendant presents an extraordinary and compelling reason, but only

---

[18] *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019) (finding that defendant was subject to a lower guideline range because a drug conspiracy conviction did not constitute a "controlled substance offense" because the statute of conviction "criminalize[d] a broader range of conduct than that covered by generic conspiracy").

where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

### C.    Courts Must Weigh the Statutory Sentencing Factors Before Granting a Sentence Reduction

After finding that a defendant committed a covered offense under the First Step Act § 404 or finding a sufficient "extraordinary and compelling reason" for compassionate release pursuant to 18 U.S.C. § 3582(c), the Court must then consider the Section 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A); *Martin*, 916 F.3d at 397–98; *McDonald*, 986 F.3d at 412. The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed . . . to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

### III.  Analysis

After due consideration, the Court will Deny Mr. Johnson's Amended Motion. (ECF No. 778.) Mr. Johnson does not offer any "extraordinary and compelling reasons" to support his request for release. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Additionally, even though Count Two qualifies as a "covered offense" under § 404 of the First Step Act, the Court must conclude that the applicable statutory sentencing factors under § 3553 do not support a reduction of his sentence.

A.    **Mr. Johnson's Request for Relief Pursuant to Section 404**

1.    **Eligibility Generally**

The Court must first address the threshold covered offense question, because "eligibility [for a sentence modification] turns on the proper interpretation of a 'covered offense.'" *Wirsing*, 943 F.3d at 185; *United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. 2020) ("[T]he existence of a 'covered offense' is a threshold requirement under the [First Step] Act."). By its own terms, the First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010[.]" First Step Act, § 404(a), 132 Stat. 5222. Accordingly, eligibility turns on which statute a defendant violated and whether Section 2 or 3 of the Fair Sentencing Act modified the statutory penalties for that offense. *See Terry*, 593 U.S. at 492 (emphasizing that "covered offense" inquiry turns on change to statutory penalties for the defendant's violation of the law). Following passage of the First Step Act, the United States Court of Appeals for the Fourth Circuit took a broad view of what constituted a "covered offense" and a defendant's eligibility for relief under the statute. In *Wirsing*, the Fourth Circuit held that the "most natural reading of the First Step Act's definition of 'covered offense' is that 'the statutory penalties for which were modified by [certain sections of the Fair Sentencing Act]' refers to 'a Federal criminal statute' rather than 'a *violation* of a Federal criminal statute.'" 943 F.3d at 185 (quoting § 404(a)) (alteration and emphasis in original). Then, in *United States v. Woodson*, the Fourth Circuit held that the First Step Act "modified the statutory penalties of 21 U.S.C. § 841(b)(1)(C) as it pertains to crack cocaine offenses, such that a conviction for trafficking crack cocaine pursuant to that statute is a 'covered offense.'" 962 F.3d 812, 814 (4th Cir. 2020). It made this determination, even though the First Step Act did not amend the penalties for § 841(b)(1)(C), because Congress

22

had altered the quantities required to trigger the penalty in subsection (C) for offenses involving less than 28 grams of crack cocaine. *Id.* at 816. It clarified that "the relevant change for purposes of a 'covered offense' under the First Step Act is a change to the statutory penalties for a defendant's statute of conviction, not a change to the defendant's particular sentencing range as a result of the Fair Sentencing Act's modifications." *Id.*

The Supreme Court subsequently rejected these approaches in the 2021 *Terry* case. Unlike the Fourth Circuit's holding in *Woodson*, the Supreme Court held that a conviction under § 841(b)(1)(C) did not constitute a covered offense, because "§ 2(a) of the Fair Sentencing Act modified the statutory penalties only for subparagraph (A) and (B) crack offenses[.]" 593 U.S. at 495. In making this conclusion, it also rejected the Fourth Circuit's reasoning in *Wirsing*. The *Terry* Court explained that "'statutory penalties' references the entire, integrated phrase '*a violation* of a Federal criminal statute,'" *Id.* at 492. 141 S. Ct. at 1863 (internal quotation marks omitted) (emphasis added), whereas the Fourth Circuit had determined that the statutory penalties "refers to a 'Federal criminal statute'" rather than a violation of a Federal criminal statute. *Wirsing*, 943 F.3d at 185. Thus, the Supreme Court concluded that the First Step Act "directs our focus to the statutory penalties for petitioner's *offense*, not the statute or statutory scheme." 593 U.S. at 494 (emphasis in original).

## 2. Eligibility of Count Two Under the First Step Act

The Court will begin its analysis with Count Two. The First Step Act imposes three eligibility requirements. To qualify for consideration for relief, a defendant must show that he or she: (1) committed a covered offense on or before August 3, 2010; (2) did not have the sentence reduced under sections 2 or 3 of the Fair Sentencing Act of 2010; and, (3) did not file a previous motion under § 404 of the First Step Act that the Court denied on the merits. *See United States*

23

*v. Hardnett*, 417 F. Supp. 3d 725, 733 n.7 (E.D. Va. 2019) (citing First Step Act statute and limitations).

Here, the Court finds Mr. Johnson eligible for a sentence reduction under the First Step Act for his Count Two conviction. First, he committed a covered offense — a violation of 21 U.S.C. § 846, with § 841(b)(1)(A)(iii) as its object — before August 3, 2010. *See Wirsing*, 943 F.3d at 185. Second, he did not have his sentence imposed or reduced under Section 2 or 3 of the Fair Sentencing Act of 2010. Third, he has not filed a previous motion under § 404 of the FSA that the Court has denied on the merits. Accordingly, the Court concludes that Mr. Johnson's sentence for Count Two is eligible for a sentence reduction under the First Step Act.

### 3.   Eligibility of Count One Under the First Step Act

Next, the Court will determine if Count One is also a "covered offense." In light of both the United States Supreme Court's 2021 decision in *Terry*—as well as this Court's application of the *Terry* test to a RICO offense in *United States v. Allen*—the Court finds that Mr. Johnson's Count One RICO violation is not a covered offense within the meaning of § 404 of the First Step Act.

Shedding light on what constitutes a covered offense under § 404, the 2021 Supreme Court in *Terry* noted that "'statutory penalties' references the entire, integrated phrase 'a violation of a Federal criminal statute.'" 593 U.S. at 492 (citation omitted). Thus, courts must "focus [on] the statutory penalties for [the defendant's] *offense*, not the statute or statutory scheme." *Id.* at 493. As another judge in this court has succinctly summarized in *Allen*, *Terry* dictates that courts "examin[e] the elements of the offense and determin[e] if the statutory penalties that would result from a conviction charging those elements changed in 2010 with the

passage of the Fair Sentencing Act." *United States v. Allen*, No. 3:03cr394 (DJN), 2022 WL

2124495, at *6 (E.D. Va. June 13, 2022).

The *Allen* Court held that a RICO offense under 18 U.S.C. § 1962(d) did not qualify as

"covered" under this test. It explained that:

> [a]lthough the Fair Sentencing Act modified the statutory penalties for the
> specific racketeering activities that form a predicate for Defendant's RICO
> conspiracy conviction, the element of the RICO conspiracy conviction does not
> depend on 'whether crack was involved or on the quality of crack involved.'
> Instead, it required the agreement to commit a 'racketeering activity,' which does
> not depend on the type or quantity of the drug.

*Allen*, 2022 WL 2124495, at *8 (quoting *United States v. Thomas*, 32 F. 4th 420, 427 (4th Cir.

2022)). So too here. The Fair Sentencing Act undoubtedly modified the penalties for one of the

predicate activities for Mr. Johnson's RICO offense, but it did not alter the penalties imposed for

the RICO offense itself.[19] *See Allen*, 2022 WL 2124495, at *8 ("That a covered offense could

have formed the predicate for [one of the elements] does not change the analysis. [That] element

could include any number of racketeering activities, including other drug violations that do not

involve quantities of crack cocaine implicated by the Fair Sentencing Act.") The Court concurs

with the *Allen* court's thorough consideration of this issue and finds that Mr. Johnson's § 1962(c)

violation is not a "covered offense."

Moreover, even if Mr. Johnson's § 841(b) sub-count was enough to make his § 1962(c)

conviction a covered offense, if the Fair Sentencing Act were in effect at the time of Mr.

Johnson's sentencing, his statutory penalty range and his guideline sentencing range would both

have remained the same. (ECF No. 802, at 1.) Because of Mr. Johnson's other RICO sub-

counts, specifically the three murders for which the jury found him responsible, and after

---

[19] Moreover, as the United States identifies, Mr. Johnson's 21 U.S.C. § 841(b)(1)(A)(iii)
violation was merely one of several other (non-drug related) activities that formed predicate
activities for his RICO conviction.

adjusting for enhancements and grouping, his advisory range would have been life—the same as Mr. Johnson faced at his conviction in 2002. (ECF No. 752.) This finding thus weighs in favor of denying Mr. Johnson relief even given that the sentencing judge operated under mandatory guidelines.

### 4. Eligibility of a Reduction for Count One Under the Sentencing Package Doctrine

The determination that Mr. Johnson's RICO charge is not a covered offense under §404 does not end the Court's inquiry. The Court "has the discretion to reduce both covered and noncovered offenses under the First Step Act if they function as a package." *United States v. Richardson*, 96 F.4th 659, 665 (4th Cir. 2024). This "recognizes the holistic approach district courts employ when fashioning a sentence" and allows the Court to "reconfigure the sentencing plan to ensure it remains adequate to satisfy the statutory sentencing factors." *Id.* at 665–66 (citing *United States v. Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010) ("The ultimate question . . . is whether the sentence is 'sufficient, but not greater than necessary' in light of the factors identified in § 3553(a).") (internal citation omitted).

It cannot be disputed that Mr. Johnson's offenses function as a package for sentencing purposes. According to the PSR, the "drug distribution racketeering act and Count Two" were grouped pursuant to U.S.S.G. § 3D1.2. (ECF No. 752-1, at 42.) Mr. Johnson's offenses were then combined pursuant to U.S.S.G. § 3D1.4 (2001), resulting in a Combined Adjusted Offense Level of 49. (ECF No. 752-1, at 42.) This resulted in a sentencing guideline range of Life imprisonment on each count. (ECF No. 752-1, at 32.) Had Mr. Johnson's offenses not been combined, his offense level for Count Two would have been 42 which, combined with a Criminal History Category of VI, would have resulted in a sentencing guideline range of 360 months' incarceration to Life imprisonment. *See* U.S.S.G. Ch. 5 Pt. A. For this reason, it is

within the Court's discretion determine if a reduction of Mr. Johnson's sentence on Count One is appropriate.

**B.     Mr. Johnson's Lengthy Sentence Does Not Constitute an Extraordinary and Compelling Reason for Relief Pursuant to §603(b) of the First Step Act**

Despite failing to name it a motion for compassionate release, as motions brought under § 3852(c) are commonly known, given Mr. Johnson's repeated references to "extraordinary and compelling" circumstances, and the fact—pointed out by other courts[20]—that this statute speaks not of release but of sentence reduction, this Court will consider this motion under the same standard as one for compassionate release motions.

**1.     Exhaustion of Administrative Remedies**

The Court first finds that Mr. Johnson has not exhausted his administrative remedies. However, because Mr. Johnson's motion alleges a violation of his constitutional rights, which he has previously been procedurally barred from vindicating, requiring him to pursue agency review would subject him to prejudice, and therefore the Court will waive this requirement.

**2.     Mr. Johnson's Lengthy Sentence Does Not Constitute an Extraordinary and Compelling Reason for a Sentence Reduction**

Mr. Johnson contends that the imposition of a life sentence "without regard for his age or his highly mitigating background, imposed under a mandatory sentencing regimen, is an 'extraordinary and compelling reason' for reducing his sentence." (ECF No. 778, at 7.)  The Court disagrees.

As an initial matter, Mr. Johnson's assertion of the unconstitutionality of his sentence is a collateral attack on his conviction and is not properly brought as a motion for compassionate

---

[20] *See United States v. Cruz*, No. 3:94-CR-112, 2021 WL 1326851, at *1 n.1 (D. Conn. Apr. 9, 2021) (noting that while the Defendant styled the motion as one for compassionate release, this is a misnomer given that §3582(c) "speaks of sentence reductions" rather than sentence eliminations or early release).

release under 18 U.S.C. § 3582(c)(1)(A). A motion under "[28 U.S.C.] § 2255 is the exclusive

method of collaterally attacking a federal conviction or sentence;" therefore, "a criminal

defendant is foreclosed from the use of another mechanism, such as compassionate release, to

sidestep § 2255's requirements." *United States v. Ferguson*, 55 F.4th 262, 270 (4th Cir. 2022).

However, § 2255 was intended to provide additional remedies for federal prisoners, not to limit

their ability to collaterally attack their convictions and sentences. *Jones v. Zych*, 821 Fed.Appx.

115, at 119 (4th Cir. 2020) (citing *Davis v. United States*, 417 U.S. 333, 343 (1974), and *In re

Jones*, 226 F.3d 328, 332 (4th Cir. 2000)). Thus, "when § 2255 proves 'inadequate or ineffective

to test the legality of his [or her] detention,'" such as when a petitioner has previously filed one

unsuccessful § 2255 motion, "a federal prisoner may petition for habeas relief under § 2241"

instead. *Id.* (quoting 28 U.S.C. § 2255(e)); *see also Fontanez v. O'Brien*, 807 F.3d 84, 87 (4th

Cir. 2015) (recognizing that "attacks on the execution of a sentence are properly raised in a

§ 2241 petition").

　　Mr. Johnson is foreclosed from filing a § 2255 motion because he has previously filed an

unsuccessful one. (*See* ECF Nos. 623, 670); *see Zych*, 812 Fed.App'x. at 119–20 (noting that

"federal prisoners . . . who have already filed one unsuccessful § 2255 motion, are generally

barred from taking a second bite at the apple" and that in such cases "their last hope is to file a

traditional § 2241 petition via § 2251's savings clause"). Thus, if Mr. Johnson seeks to

challenge the constitutionality of his conviction, he should file the appropriate motion under 28

U.S.C. § 2241 for a writ of habeas corpus.

　　In any event, not only was there no extreme disparity in what his original maximum

sentence would have been, there is no disparity at all.

**C.    The § 3553(a) Factors Do Not Support a Reduction in Mr. Johnson's Sentence**

Although Mr. Johnson did not satisfy the requirement for an "extraordinary and compelling" reason for compassionate release, in the interest of creating a full record, *see* 18 U.S.C. § 3553(a), and because Mr. Johnson's Count Two charge is a "covered offense," the Court must next evaluate the applicable § 3553(a) sentencing factors.

Upon review, Mr. Johnson's underlying convictions and extensive criminal history demonstrate that he presents an ongoing threat to the public and no conditions of release would sufficiently assure the safety of the community at this time. Mr. Johnson began participating in criminal activity at the age of 12 and continued to pursue a life of criminal activity until his incarceration at the age of 22. (ECF No. 752-1 ¶¶ 50–69.) Not only was he involved in a large drug conspiracy with his street gang, the Fulton Hill Hustlers, but a jury found Mr. Johnson specifically responsible for the murder of three individuals on three separate occasions, one of which was predicated upon on a mistaken assumption that the victim was from a different neighborhood. (ECF No. 752-1 ¶ 32.) This conduct is discussed in significant detail in paragraphs 28, 31, and 32 of the Presentence Report, which the Court incorporates by reference. (ECF No. 752-1 ¶¶ 28, 31–32.) But the Court will highlight the relevant portions again. As noted, Mr. Johnson committed three murders. On September 9, 1995, Mr. Johnson murdered Marcus Turner in an alley in Richmond, Virginia by shooting him three times. (ECF No. 752-1 ¶ 28.) Mr. Turner was shot in the neck, shoulder, and abdomen and left partially naked. (ECF No. 752-1 ¶ 28.) On July 5, 1996, five months before he turned 18, Mr. Johnson murdered Liston Tyler when they got into an argument while Mr. Tyler was attempting to purchase crack cocaine from Mr. Johnson. (ECF No. 752-1 ¶ 31.) Mr. Johnson shot Mr. Tyler in the arm, chest, elbow, stomach, and buttock for a total of five gunshot wounds. (ECF No. 752-1 ¶ 31.) Less

than a month later, on July 20, 1996, Mr. Johnson murdered Robert Tabb.  (ECF No. 752-1 ¶ 32.)  Mr. Tabb was a passenger of a vehicle that was stopped at a red light in the Fulton Hill neighborhood.  (ECF No. 752-1 ¶ 32.)  Mr. Johnson saw Mr. Tabb and believed him to be from the Mosby Court area of Richmond, Virginia, so he "shot at the vehicle and struck [Mr.] Tabb in the head."  (ECF No. 752-1 ¶ 32.)  Mr. Johnson was wrong.  Mr. Tabb was taken to the hospital and pronounced dead.  (ECF No. 752-1 ¶ 32.)

When discussing Mr. Johnson's actions, the sentencing judge stated that the murders, especially that of Mr. Tabb, were "senseless" and that Mr. Johnson had "no conscience."  (ECF No. 802-1, at 47–48.)  The sentencing judge continued: "[i]t was [Mr. Johnson's] youth . . . that prevented this from being a death penalty case.  But [Mr. Johnson] has been removed as a cancer . . . [a]nd hopefully, he will never see the light of day."  (ECF No. 802-1, at 48.)  This commentary might indeed constitute a finding of "permanent incorrigibility" even if the Supreme Court had required such a finding to be made in order to impose a life sentence on an offender who committed a murder while a juvenile in *Jones v. Mississippi*, which it did not.  *See Jones*, 141 S. Cr. 98, 104, 106-13 (2021).

Furthermore, Mr. Johnson was found to have obstructed justice by threatening and intimidating a witness.  (ECF No. 752-1 ¶ 48.)  Specifically, Mr. Johnson believed that an associate of his had provided information regarding the murder of Mr. Tabb to the police and was going to testify against him.  (ECF No. 752-1¶ 48.)  While incarcerated awaiting the state murder trial, Mr. Johnson sent a letter to a co-conspirator informing them of the potential testimony.  (ECF No. 752-1¶ 48.)  Mr. Johnson's actions resulted in at least 10 shots being fired at the witness's home by Mr. Johnson's co-conspirators, while the witness and their family were seated at the dinner table.  (ECF No. 752-1 ¶ 48.)  That witness, along with another witness who

had heard about this incident, then refused to testify against Mr. Johnson. The state charges relating to the murder of Mr. Tabb were nolle prossed. (ECF No. 752-1¶ 48.) The Court thus concludes that the seriousness of Mr. Johnson's offenses, the need to promote respect for the law, and the need to protect the public outweigh his immediate release.

The Court is conscious of its duty to consider these crimes within the circumstances and context of Mr. Johnson's youth but finds that his crimes do not bear the mitigating hallmarks of youth. "Even if a court considers a child's age before sentencing [them] to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects 'unfortunate yet transient immaturity.'" *Montgomery*, 577 U.S. at 208 (quoting *Miller*, 567 U.S. at 479). The nature of these crimes, at least one of which was apparently entirely unprovoked, the fact that these murders were committed with time intervening, and follow a pre-existing and substantial criminal history, cannot be said to demonstrate an "unfortunate yet transient immaturity." *See id.* Mr. Johnson clearly led a troubled life and faced significant challenges, something for which the PSR presents only a muted background, but even considering that evidence, nothing supports finding mitigating factors that might have lessened his culpability for the three murders he committed.

Mr. Johnson's conduct while incarcerated does not demonstrate that he has benefited from the other hallmark of youth: an ability to grow and change. Since his incarceration, Mr. Johnson has shown a continued disregard for the law, demonstrated by his significant institutional disciplinary history. Between May 2005 and April 2021, Mr. Johnson committed sixteen disciplinary infractions:

    (1)    Refusing Work/Program Assignment on April 22, 2021;
    (2)    Refusing Work/Program Assignment on April 19, 2021;
    (3)    Refusing Work/Program Assignment on April 9, 2021;
    (4)    Testing Positive for Narcotics on June 5, 2019;

(5)     Attempted Assault of a Staff Member on May 28, 2019;
(6)     Refusing to Obey an Order during an Emergency on August 18, 2018;
(7)     Possession of a Dangerous Weapon on June 23, 2017;
(8)     Possession of Drugs or Alcohol on May 9, 2013;
(9)     Refusing a Drug or Alcohol Test on September 15, 2011;
(10)    Interfering with Taking Count on September 7, 2011;
(11)    Possession of a Dangerous Weapon on February 18, 2010;
(12)    Possession of a Dangerous Weapon on September 10, 2009;
(13)    Use of Drugs/Alcohol on April 15, 2009;
(14)    Failing to Stand for Count on September 30, 2005;
(15)    Interfering with Taking Count on September 30, 2005; and
(16)    Refusing to Obey an Order on May 13, 2005.

(*See* ECF No. 802-2.)  Three of these infractions were incurred just two months after Mr.

Johnson filed the Amended Motion.  Mr. Johnson contends that he has matured and is "quite

literally not the person who committed these offenses." (ECF No. 778, at 16.)  However, these

infractions — especially those for possessing a dangerous weapon and attempted assault on a

staff member — demonstrate that Mr. Johnson still presents a threat to public safety, which the

Court must balance against his request for relief.

The Court acknowledges that Mr. Johnson cites his engagement in over 1,240 hours of

BOP–sponsored education and vocational opportunities.[21]  (ECF No. 813-1, at 2–3.)

Unfortunately, Mr. Johnson's participation in rehabilitation and education programs similarly

does not overcome the relevant statutory sentencing factors to support the requested reduction in

his sentence.  Mr. Johnson contends that his Motion should be granted because of his

"commitment to rehabilitation and self-improvement." (ECF No. 813, at 5.)  In *United States v.*

*Martin*, the Fourth Circuit vacated and remanded the district court's denial of both defendants'

motions to reduce sentence because the district court failed to address any new mitigating

---

[21] Thes educational courses include, *inter alia*, Alcoholics/Narcotics Anonymous, Victim
Impact Panel, Commercial Drivers License, ACE Guide to Online Safety, Resume Writing, eight
animal anatomy courses, ASVAB Career Exploration, and eight fitness classes. (ECF No. 813-1,
at 2.)  Mr. Johnson also obtained his GED in 2019.  (ECF No. 813-1, at 2.)

evidence when denying the motions.  916 F.3d 389, 397–98 (4th Cir. 2019).  The Fourth Circuit has explained that if an individual is eligible for a sentence reduction, the district court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken."  *Id.* at 397.  Mr. Johnson displays progress in his rehabilitation, and this Court commends his efforts while noticing his transgressions.  However, Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t).  The Court acknowledges Mr. Johnson's participation in programs during his time in prison and encourages him to continue, but these measures do not warrant a reduction in light of the seriousness of his crimes and significant institutional disciplinary history.

Considering the foregoing, the Court concludes that the current record, and the procedural vehicle Mr. Johnson uses, do not justify or allow a reduction of Mr. Johnson's life sentence.

## IV.  Conclusion

For the reasons stated above, the Court will deny the Amended Motion.  (ECF No. 778.) Mr. Johnson's *pro se* Motion to Reduce Sentence Under the First Step Act, (ECF No. 771), is DENIED as MOOT.

An appropriate Order shall issue.

Date: 2/25/2025
Richmond, Virginia

/s/
M.  Hannah Lauck
United States District Judge

# APPENDIX A

**U.S.S.G. §1B1.13.**   **Reduction in Term of Imprisonment Under 18 U.S.C.**
                        **§ 3582(c)(1)(A) (2023)**

. . .

    (b)    <u>Extraordinary and Compelling Reasons</u>.—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

        (1)    <u>Medical Circumstances of the Defendant</u>.—

            (A)    The defendant is suffering from a terminal illness (<u>i.e.</u>, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (<u>i.e.</u>, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

            (B)    The defendant is—

                (i)    suffering from a serious physical or medical condition,

                (ii)    suffering from a serious functional or cognitive impairment, or

                (iii)    experiencing deteriorating physical or mental health because of the aging process,

            that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

            (C)    The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

            (D)    The defendant presents the following circumstances—

                (i)    the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority.

       (ii)    due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

       (iii)   such risk cannot be adequately mitigated in a timely manner.

(2)    <u>Age of the Defendant</u>.—The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(3)    <u>Family Circumstances of the Defendant</u>.—

    (A)    The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

    (B)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

    (C)    The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

    (D)    The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "immediate family member" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

(4)    <u>Victim of Abuse</u>.—The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

    (A)    sexual abuse involving a "sexual act," as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or

2

      (B)      physical abuse resulting in "serious bodily injury," as defined in the Commentary to §1B1.1 (Application Instructions);

that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.

For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

(5)     <u>Other Reasons</u>.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6)     <u>Unusually Long Sentence</u>.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

## APPENDIX B

**U.S.S.G. § 1B1.13 n.1 (2021)** provides that:

1. <u>Extraordinary and Compelling Reasons</u>.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A)   <u>Medical Condition of the Defendant</u>.—

      (i)   The defendant is suffering from a terminal illness (<u>i.e.</u>, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (<u>i.e.</u>, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

      (ii)   The defendant is—

         (I)   suffering from a serious physical or medical condition,

         (II)   suffering from a serious functional or cognitive impairment, or

         (III)   experiencing deteriorating physical or mental health because of the aging process,

         that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

   (B)   <u>Age of the Defendant</u>.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

   (C)   <u>Family Circumstances</u>.

      (i)   The death or incapacitation of the caregiver of the defendant's minor child or minor children.

      (ii)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)   <u>Other Reasons</u>.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).